Roosevelt HOLLINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–01108–CR.

Court of Appeals of Texas,
Dallas.

July 16, 1987.

Russ Hendricks, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before STEPHENS, McCLUNG and LAGARDE, JJ.

STEPHENS, Justice.

Roosevelt Hollins appeals his conviction by a jury of sexual assault. Hollins pled true to one enhancement paragraph contained in the indictment, and the jury found a second enhancement paragraph to be true. The jury sentenced Hollins to forty years' confinement in the Texas Department of Corrections. Hollins asserts four points of error on appeal: (1) that the trial court erred in admitting into evidence photographs of complainant; (2) that a reading of testimony to the deliberating jury pursuant to Article 36.28 of the Texas Code of Criminal Procedure was inaccurate, and therefore denied appellant due process; (3) that the photographic line-up procedures were unduly suggestive and that, consequently, appellant was denied due process; and (4) that the prosecutor engaged in improper jury argument. We agree with Hollins' second point of error. Consequently, we reverse and remand for a new trial.

The essential facts reflect that on Thursday June 19, 1986, complainant and her boyfriend rented room 135 at the Raddisson Hotel for the purpose of giving a party for a friend. Room 135 is divided into two separate rooms: a living area with a television; and a bedroom. On Friday, June 20, in the evening, approximately twenty to twenty-five persons attended the party at room 135. The party lasted all night. The morning after the party, complainant, her boyfriend, and Allen Huff drove another guest home and drove to a Fort Worth bank to withdraw some money. Complainant and her companions returned to room 135 at approximately 9:00 A.M. on Saturday, June 21, and decided to go to sleep. Complainant was the last person in the group to go to bed. Complainant's boyfriend was asleep on one of the beds and Allen Huff and Damon Lawson were asleep in the other bed. Therefore, complainant went to sleep on the floor between the two beds. Complainant slept in the black party dress she had worn the previous evening.

Complainant testified that she woke up because someone was whispering in her ear. She was sleeping on her stomach and tried to roll over to see who was whispering. Her dress was pushed up around her waist. Complainant realized that she was being held down. She turned her head and saw a black hand on on her shoulder, and then saw appellant's face. Complainant attempted to scream, but her voice was hoarse and the pillow under her head muffled her scream. Complainant testified that appellant raped her. According to complainant, when appellant got off of her, she turned her head and saw a female maid standing in the bathroom doorway.

One of the guests asleep in the room at the time of the incident, Allen Huff, testified that he heard complainant cry out and saw appellant "kind of kneeling over [complainant]."

Damon Lawson testified that he woke up at approximately 11:00 or 12:00 A.M., on Saturday when he heard a knock at the door. When he answered the door, appellant and a woman maid inquired whether he wanted the room cleaned. Damon responded negatively. Damon then "cleaned up" and left to go visit a friend. The complainant, Allen, and complainant's boyfriend were all still asleep when Damon left.

Appellant testified that he was an employee of the Raddisson Hotel on the date of the offense. He was employed to work in the housekeeping department. He was working in tandem with a female maid at the time of the offense. Appellant testified that one of the guests of room 135, whom appellant identified at trial as Damon Lawson, had asked him to clean the front living portion of the room and place clean towels in the bathroom. Appellant testified that he did as he was told, and that he did not enter the bedroom portion of room 135. Appellant testified that he did not rape complainant.

The parties, pursuant to the order issued January 21, 1986, by the Texas Court of

Criminal Appeals, waived the presence of a court reporter and agreed that a record of all proceedings in the present case would be made by electronic tape recording. In his second point of error appellant points out that the testimony read to the deliberating jury by the court reporter varies from the electronically recorded testimony.

During their deliberations, the jury sent the following note to the trial court:

We, the Jury, disagree as to the Defendant's testimony concerning the request of room cleaning by Damon.

The trial court, in response to the jury's note, instructed the court reporter to read the relevant testimony from her notes. *See* TEX.CODE CRIM.PROC.ANN. art. 36.28 (Vernon 1981). The court reporter read the following testimony to the jury:

COURT REPORTER: This is direct examination by [Defense Attorney] "Question: Have you seen the occupants of Room 135 at any time? Answer: I seen one gentleman who asked me to go into the room. Question: Okay. Where did you see him? Answer: I seen him where we go in the maid quarters. Questions: Okay. Was he the person that testified earlier in the trial? Answer: Yes, he did. Question: Okay. Your recollection was he said to go in and clean the room. Answer: Yes, he did. Question: Did he specify what part of the room to clean? Answer: Yes, he did. Question: What did he say precisely? Answer: He said there was some more guests inside the room. I would appreciate it if you would go in and get the dirty towels that's in the bathroom and clean up the front room. Question: Did he indicate whether or not you should go in the bedroom? Answer: No, he did not. Question: Okay. Did he say don't go in the bedroom or he didn't say anything at all? Answer: No, he didn't. Question: Didn't indicate either way? Answer: No." And this will be cross examination by [the Prosecutor] "Question: Now, who "—wait a minute. Excuse me. "Now, who is the man that asked you to come in and change the towels? Which one of the witnesses was that that you're referring? Answer: I can't remember, but I remember what he had on. Question: Well, can you remember what order the persons testified earlier in so I can identify which man you're talking about? Answer: Let's see. The second gentleman. Question: The second person? Answer: Yes. Question: You're saying that's the one that asked you to come in and change the towels? Answer: Yes. Question: What time did he do this? Answer: I can't recall. Question: You can't recall? Answer: No." and that's the end of the testimony.

The electronically recorded testimony substantially mirrors the above testimony except that in response to defense counsel's question, "Had you seen the occupants of room 135 at any time?" appellant responded, "I seen one gentleman who asked me *and Ms. [complainant]* to go into the room." The underlined portion of appellant's response was omitted from the court reporter's reading of the testimony to the jury.

■ The State argues that Hollins has waived this point of error because he did not object to the reading of the court reporter's version of the testimony. We hold that appellant has sufficiently preserved this point for our review. Appellant could not lodge a timely objection or complain of this error in a motion for new trial because the discrepancy between the official, electronically recorded record and the court reporter's notes did not come to light until appellant filed his notice of appeal and obtained a transcription of the electronic record. We point out that the better procedure would have been for Hollins to object to the reading of testimony pursuant to Article 36.28 of the Texas Code of Criminal Procedure from a non-official transcription of the record. However, in the case at bar, Hollins' point of error is preserved. Accordingly, we will now address the merits of appellant's second point of error.

■ Error was committed when the court reporter read testimony to the jury which was different from the actual testimony at trial. There is no authority for this point, because until now, the court

reporter's notes have been the official record. However, it is only logical that reading incorrect testimony to the jury pursuant to Article 36.28 of the Texas Code of Criminal Procedure is error. We must now determine if such error is harmless.

Appellant argues that he was harmed by the erroneous reading of his testimony:

> This is likely the very point of testimony which the jury was debating upon because it would have potential bearing upon Ms. [complainant's] identification of the appellant. Had she seen him only in room 135 at the time of the alleged rape or did she perhaps see him outside room 135 and mistakenly identified [sic] him from the earlier encounter?

Texas Rule of Appellate Procedure 81(b)(2) provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

We have thoroughly reviewed the entire record, and we are unable to determine beyond a reasonable doubt that the error in question made no contribution to Hollins' conviction. Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.